## Connecticut Resources Recovery Authority *v.* Refuse Gardens, Inc., et al.

Superior Court     Judicial District of     File No. 364240
Hartford-New Britain at Hartford

Memorandum filed April 15, 1993

*Murtha, Cullina, Richter & Pinney,* for the plaintiff.

*LaBelle, LaBelle & Moriarty,* for the named defendant et al.

Aronson, J. This action was commenced with a return day of July 18, 1989. The plaintiff, the Connecticut Resources Recovery Authority, filed a motion seeking a prejudgment remedy in the amount of $1,009,286.38. The plaintiff claims that this sum represents its cost to date in responding to contamination emanating from a landfill formerly owned by the defendants and purchased by the plaintiff in 1986. The defendants deny responsibility for the cost. The landfill, located in Ellington, was acquired by the plaintiff from the named defendant, Refuse Gardens, Inc. (Refuse), on July 7, 1986. On July 18, 1986, Refuse filed a dissolution certificate with the state, becoming a dissolved corporation.

The plaintiff seeks to recover costs to remedy the effects of leachate and methane gas generated by conditions contained in the landfill during the period in which Refuse was the owner.

At this time, the plaintiff is seeking a prejudgment remedy pursuant only to count four of its five count complaint. In count four, the plaintiff claims that the defendants Anthony Botticello, Dennis Botticello, Michael Botticello, Richard Botticello and Botticello, Inc., were operators of the landfill and participated in its management.

The plaintiff claims that under General Statutes § 22a-452 (a)[1] it is entitled to reimbursement for amounts it has expended and will expend to contain, remove or mitigate the effects of leachate and methane gas.

Leachate is created by rainwater and surface water entering buried refuse in a landfill from the top and seeping through the sides and bottom of the landfill. The process of rainwater and surface water passing through the landfill creates a contaminant. This contaminant, in the form of water, comes out the sides and bottom of the landfill polluting the groundwater in the area.

---

[1] General Statutes § 22a-452 (a) provides: "Any person, firm, corporation or municipality which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation. When such pollution or contamination or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby."

Methane gas is created from the household solid waste material delivered to the landfill that decomposes. Methane gas is highly flammable.

Landfill leachate and landfill gas are commonly associated with municipal solid waste landfills.

The history of the landfill in issue here is as follows. In 1966, two individuals, Parker and Sweet, opened the landfill and began its operation. In October, 1974, Anthony Botticello became the owner of the landfill. Botticello owned and operated the landfill until August, 1983, when ownership was transferred to Refuse. Refuse sold the landfill to the plaintiff in July, 1986.

During the entire period of its operation, the landfill took in solid waste for disposal from various local municipalities. The landfill operation was regulated by state and local authorities and various permits relating to the operation were issued by the state department of environmental protection (department) and the Ellington planning and zoning commission (commission).

Seven months after the plaintiff acquired the landfill, the commission, for the first time, required the owner of the landfill to undertake a comprehensive hydrogeologic investigation. The study was accomplished by the engineering firm of Fuss and O'Neil in April, 1988. This study revealed groundwater contamination and landfill gas contamination migrating beyond the boundary of the landfill.

The plaintiff offered the testimony of an expert who concluded that the landfill gas and groundwater contamination must have come from waste disposed of before the plaintiff purchased the landfill.

On the basis of the results of the investigation, in August and September, 1989, the department issued two orders to the plaintiff concerning groundwater,

surface water and landfill gas contamination, all of which were emanating from the landfill. In addition, the commission imposed additional requirements concerning both groundwater and landfill gas contamination.

The plaintiff hired the firm of Energy Tactics to implement the department's 1989 orders and to comply with the commission's 1989 requirements concerning landfill gases. Energy Tactics made a number of submissions to the department, and, after receiving the department's approval, oversaw the installation and construction of a landfill gas recovery system.

The plaintiff claims that it has incurred, and will continue to incur, substantial expenditures in responding to this contamination. As a result of its landfill gas investigation, the plaintiff must install a landfill gas recovery system at a cost of $877,963.18. The plaintiff claims that it has spent approximately $133,661.19 studying groundwater and surface water contamination.

The defendants placed at issue the plaintiff's standing to use § 22a-452 as a basis for this claim under count four of its complaint.

As the defendants point out in their brief, "this legislation was originally enacted in 1969 in response to a series of oil spills which had occurred in Connecticut harbors. Regulators and municipalities found it difficult to recover cleanup costs from the responsible parties and legislation was drafted to address this concern . . . . Since 1969, the statute has been amended to eliminate language which limited the applicability of the statute to pollution occurring in 'waters of this state or adjoining shorelines or beaches' and the scope of the statute has also been expanded so that it is no longer limited to oil and petroleum spills only."

Section 22a-452 (a) provides for reimbursement for contaminant removal costs only where the pollution or contamination "resulted from the negligence or other actions of such person, firm or corporation."

The plaintiff's problems result from its ownership of a landfill, not from the negligent actions of the defendants. It was Refuse that sold the landfill to the plaintiff in 1986, not the individual defendants. The plaintiff's position is no different from that of any other purchaser complaining about the condition of property it has purchased. That condition could have been addressed by a detailed prepurchase inspection of the condition of the landfill, and by reliance on the negative covenant required by General Statutes § 22a-134a.[2]

---

[2] General Statutes § 22a-134a provides: "NEGATIVE DECLARATION. CERTIFICATION OF CLEANUP. (a) No person shall transfer an establishment except in accordance with the provisions of section 22a-134 to 22a-134d, inclusive.

"(b) Prior to transferring an establishment, the owner or operator shall submit a negative declaration to the transferee and shall, within fifteen days after the transfer, submit a copy of such declaration to the commissioner.

"(c) If the owner or operator is unable to submit a negative declaration, prior to the transfer the transferee or other party to the transfer shall certify to the commissioner that to the extent necessary to minimize or mitigate a threat to human health or the environment, he shall contain, remove or otherwise mitigate the effects of any discharge, spillage, uncontrolled loss, seepage or filtration of hazardous waste on-site in accordance with procedures and a time schedule approved by the commissioner pursuant to an order, stipulated judgment or consent agreement.

"(d) A lien pursuant to section 22a-452a shall not be placed against real estate on which a service station was transferred and in operation on or after May 1, 1967, provided the transferor certifies to the transferee that (1) the service station, or any part thereof, complies with regulations adopted by the commissioner of environmental protection pursuant to subsection (d) of section 22a-449 concerning design, construction, installation and maintenance of underground facilities storing oil or petroleum liquids, (2) there has been no spill on the real estate or any spill has been cleaned up in accordance with procedures approved by the commissioner and the commissioner has determined that such spill does not pose a threat to human health or safety or to the environment which would warrant containment or removal or other mitigation measures and (3) any hazardous waste or oil or petro-

Section 22a-452 provides that any party that mitigates the effects of an improper discharge of hazardous waste may recover such reasonable costs necessary to correct the effects of such discharge.

The plaintiff claims that there are three essential elements to § 22a-452: (1) that a party has contained, removed or otherwise mitigated the effects of covered substances the effects of which are causing contamination; (2) the contamination was caused by the defendants; and (3) the costs to mitigate are reasonable.

The language of § 22a-452 (a) clearly places the responsibility for noncontainment of hazardous waste on a party where the noncontainment results "from the negligence or other actions of such person, firm or corporation." Section 22a-452 appears to address a situation where one owner's property is contaminated by hazardous waste from another owner's property. This section permits the injured property owner to abate the contamination and to seek reimbursement from the generator of the contamination.

On the flip side of § 22a-452 is General Statutes § 22a-451, which authorizes the commissioner of environmental protection to abate the contamination of any land or water of the state, and to seek reimbursement for the cost from any person, firm or corporation that directly or indirectly causes the harm. Thus, under § 22a-451, merely causing the harm or being the generator of the contamination obligates a party to reimburse the commissioner for the abatement costs. Section 22a-451 goes on, however, to impose a penalty for one who "negligently" causes the contamination

leum liquid remaining on the real estate is being managed in accordance with the provisions of this chapter and chapter 446k and regulations adopted thereunder.

"(e) The commissioner may adopt regulations in accordance with the provisions of chapter 54 to implement the provisions of this section."

to "be liable for damages equal to one and one-half times the cost and expenses incurred" by the commissioner. If the contamination was wilfully caused, § 22a-451 provides for a penalty of double the costs and expenses incurred.

No such language, as contained in § 22a-451, appears in § 22a-452. The plaintiff's premise is that if the contamination was caused by a party that this alone would obligate the party under § 22a-452. The plaintiff would read § 22a-452 to eliminate fault as a basis for liability. The issue of culpability was discussed but not decided in *Collonnade One* v. *Electrolux Corp.*, 767 F. Sup. 1215, 1218 (D. Conn. 1991), where Judge Cabranes stated: "Even were I to agree with [the] plaintiffs that a finding of culpability is not required, some causal connection between [the] defendants' actions and the contamination is necessary before [the] defendants can be found liable under § 22a-452 (a)."

The relationship between the plaintiff and the defendants for the most part is founded on a contractual basis. The defendants are alleged to be either owners or officers, directors, and shareholders of Refuse. Count one is a claim based on contractual indemnification. Count two is a claim based on a breach of the conditions of a negative declaration. Count three is a claim based on a breach of contract. Count five is a claim for a declaratory judgment. Only count four is a claim for a statutory reimbursement pursuant to § 22a-452, which is based on a fault concept. No allegations of fault, however, have been set forth by the plaintiff in count four against the defendants. It appears that the plaintiff views § 22a-452 as a statute based on liability without fault.

In contrast to § 22a-452, the federal Comprehensive Environmental Response Compensation and Liability Act; 42 U.S.C. §§ 9601 through 9657; creates a strict

liability scheme for hazardous waste violations. See *O'Neil* v. *Picillo,* 682 F. Sup. 706, 722–23 (D.R.I. 1988); *Violet* v. *Picillo,* 648 F. Sup. 1283, 1290–93 (D.R.I. 1986).

The use of the phrase "resulted from the negligence or other actions of such person, firm or corporation" in § 22a-452 (a) can be interpreted to mean only that the legislature intended § 22a-452 (a) to be based on culpability and not merely causation. " '[N]o part of a legislative enactment is to be treated as insignificant or unnecessary and there is a presumption of purpose behind every sentence, clause or phrase . . . .' *Peck* v. *Jacquemin,* [196 Conn. 53, 66, 491 A.2d 1043 (1985)], quoting *Winchester* v. *State Board of Labor Relations,* 175 Conn. 349, 355–56, 402 A.2d 332 (1978)." *DeFonce Construction Corp.* v. *State,* 198 Conn. 185, 187–88, 501 A.2d 745 (1985). We fail to see how the use of the term "other actions" in § 22a-452 (a) could negate the meaning of the word "negligence," which immediately precedes it. To read the term "other actions" so as to convert § 22a-452 (a) into liability without fault would cause us to consider the term "negligence" as either insignificant or unnecessary. This, we cannot do. *State* v. *Baker,* 195 Conn. 598, 602, 489 A.2d 1041 (1985).

This court concludes that culpability is an element of § 22a-452 (a). Since the plaintiff has not alleged facts to support the existence of this element, probable cause cannot be found as a basis for this prejudgment remedy application.

Accordingly, the plaintiff's application for a prejudgment remedy pursuant to count four of its complaint is denied.