[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE OF CORPORATE DEFENDANTS
In addition to their claims against municipal defendants, the plaintiffs have asserted that certain corporations which allegedly paid to deposit waste at the Danbury landfill are liable for damage to neighboring properties and residents and to employees at the landfill.
These defendants, Amphenol Corporation, American Home Products Corporation, Electronic Metal Finishing Corporation, The Protocol Group, Inc., and Risdon Corporation ("the corporate defendants"), have moved to strike the claims made against them in Counts Six through Fourteen of the Revised Complaint on the ground that the facts alleged in these counts do not state any cognizable cause of action. Additionally, the Protocol Group, Inc. and American Home Products, Inc. have moved to strike all counts, including Count Sixteen, on the ground that no corporate liability for the actions of subsidiaries or predecessor corporations exists upon the facts alleged. CT Page 640
 Standard of review
The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. Novametrix Medical Systems, Inc.v. BOC Group, Inc., 224 Conn. 210, 214-15 (1992); Ferryman v.Groton, 212 Conn. 138, 142 (1989); Practice Book § 10-39.
In adjudicating a motion to strike, the court must construe the facts alleged in the complaint most favorably to the plaintiff. Bohan v. Last, 236 Conn. 670, 675 (1996); Sassone v.Lepore, 226 Conn. 773, 780 (1993); Novametrix Medical Systems,Inc. v. BOC Group, Inc., supra, 224 Conn. 215; Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). Conclusions of law without sufficient alleged facts to support them will not, however, withstand a motion to strike. Fortini v.New England Log Homes, Inc., 4 Conn. App. 132, 134-35 (1985), cert. dismissed, 197 Conn. 801 (1985).
 Negligence (Counts Six, Seven and Eight)
In the Sixth, Seventh and Eighth Counts of the revised complaint, the plaintiffs allege that the corporate defendants were negligent in depositing their waste material at the Danbury landfill. In Count Seven the residential plaintiffs and in Count Eight the employment plaintiffs allege negligence per se arising from a claimed violation of Conn. Gen. Stat. § 22a-427, which prohibits a municipality or a `person' from "causing pollution of any waters of the state or maintaining a discharge of any treated or untreated wastes in violation of any provision of (Chapter 446K)."
The only location where the plaintiffs allege that the corporate defendants deposited waste was at the landfill operated by the municipal defendants. They do not allege dumping on any land owned by the corporate defendants or by any entity other than the City of Danbury. They do not allege that any of the corporate defendants had any role in operating the municipal landfill. The gravamen of the plaintiffs' negligence claims is therefore that it is actionable negligence for a corporation to deposit wastes at a municipal waste disposal facility.
In their voluminous briefing, the corporate defendants have failed to cite the two recent decisions in which the Connecticut CT Page 641 Supreme Court defined the test for the existence of a legal duty of care; Mendillo v. Board of Education, 246 Conn. 456 (1998); and Lodge v. Arett Sales Corp. , 246 Conn. 563 (1998):
 We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiffs in the case. [R.K. Constructors, Inc. v. Fusco Corp. , supra, 231 Conn.] 386-87 . . . Zamstein v. Marrasti, supra, 240 Conn. [549], 558 (1997)]. The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy. (Internal quotation marks omitted.)
Mendillo v. Board of Education, supra, 246 Conn. 483-84;Lodge v. Arett Sales Corp. , supra, 246 Conn. 572.
In the estimation of this court, the plaintiffs' claim of negligence fails on both considerations. The first, foreseeability, would be satisfied only if an entity paying a fee to deposit waste at a public refuse facility should be expected to investigate the manner in which the municipality operates the facility and foresee that the materials it is accepting will not be stored or processed in an appropriate manner. The existence of administrative regulation of landfills is well known. Connecticut's General Statutes provide for permits, inspections, reports, and other methods of oversight of virtually all aspects of management of a facility accepting solid waste, hazardous waste, or other kinds of waste. See Conn. Gen. Stat. Chapters 445, 446d, 446e.
It does not seem reasonable, as a matter of law, to impose on a user of a regulated facility the task of foreseeing that the municipality will fail in its duties to comply with applicable standards and to take applicable precautions regarding the waste it accepts and of further foreseeing that managing authorities or regulatory authorities will fail to detect or prevent noncompliance. As the Supreme Court stated in Lodge v. ArettSales Corp. , supra, 246 Conn. 575: "[i]t is a well established CT Page 642 tenet of our tort jurisprudence that `due care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable." See Palsgraf v. Long Island R.Co., 248 N.Y. 339, 345, (1928)'; Noebel v. Housing Authority,146 Conn. 197, 202 (1959) . . . A defendant is not required to take precautions against hazards that are too remote to be reasonably foreseeable. (Citations omitted.)"
In Lodge, the Supreme Court found that it was not foreseeable to an installer of security alarms that a malfunction might lead to a response by a fire truck with bad brakes which would have an accident en route. Similarly, depositing waste material at a municipal landfill does not lead the depositor to foresee either immediate or eventual mismanagement of those materials in a facility subject to regulations and standards of operation.
The plaintiffs' claim also fails the public policy test. It is not the public policy of this state to impose on entities disposing of wastes a duty to oversee and regulate the operation of the facilities where the wastes are accepted. Rather, the statutes impose those duties on various environmental protection officials and boards. If, in order to avoid liability, waste producers began requiring landfill operators to act in particular ways, conflict could arise between such demands and the requirements of governmental regulators.
This court concludes that the duty claimed by the plaintiffs as having been breached by the corporate defendants is not a duty that is or should be recognized with respect to use of a public landfill facility. Accordingly, Counts Six, Seven and Eight fail to state a cause of action and are stricken.
 Strict Liability (Counts Nine and Ten)
The plaintiffs allege in Counts Nine and Ten that the disposal of waste in a municipal landfill is an ultrahazardous activity and that the corporate defendants should be held strictly liable for any damages resulting from that activity. This court found, with regard to the motion to strike filed by the municipal defendants, that operation of a municipal landfill is not an ultrahazardous activity. The same reasoning and case law apply to the claim that depositing wastes in a municipal landfill is an ultrahazardous activity. See Caporale v.Blakeslee, 149 Conn. 79 (1961); and Green v. Ensign-Bickford Co.,25 Conn. App. 479 (1991). This court adopts the pertinent CT Page 643 portions of its ruling on the motion to strike of the municipal defendants as to the claims of strict liability.
Additionally, the corporate defendants are alleged simply to have paid the municipal defendants to take their waste and are not alleged to have conducted any activity with regard to storing or processing the waste after it was deposited at the designated place. Only the municipal defendants are alleged to have engaged in the activity of maintaining and operating the waste disposal facility, the activity that is alleged to have been ultrahazardous.
The motion to strike Counts Nine and Ten is granted.
 Trespass (Count Eleven)
In Count Eleven the plaintiffs allege that the "wrongful conduct" of the corporate defendants "resulted in the direct physical invasion of Residential Plaintiffs' properties by hazardous and toxic substances which contaminated the air, soil, and surface and subsurface waters surrounding Residential Plaintiffs' properties and entered into and upon Residential Plaintiffs' person and properties." The "wrongful conduct" alleged is the depositing of waste materials at the Danbury landfill. The plaintiffs do not allege that any of the corporate defendants had any role in operating the Danbury landfill or any role in determining where the wastes they brought there should be kept or how they should be treated or processed. In short, the plaintiffs allege that these defendants committed a trespass by entrusting waste materials to the operators of the landfill. As this court has discussed in ruling on the motion to strike filed by the municipal defendants, the required elements for an action in trespass include an intentional invasion. The element of intent may be satisfied by showing conduct that is substantially certain to result in an invasion. See Comment on Clause (a) of Section 158 of the Restatement (Second) Torts (1979).
Since the corporate defendants are not alleged to have operated the landfill or decided how their materials were to be handled or processed, they cannot be said to have had any basis for certainty, substantial or otherwise, as to the likelihood that any substance from their materials would invade neighboring properties by air or water or soil. They are alleged to have decided or directed what was to be done with the waste, and they therefore cannot be viewed as having undertaken any act that CT Page 644 constituted an intentional invasion of the plaintiffs' property.
The plaintiffs are, in effect, attempting to impose on the corporate defendants a duty to insure against trespass by the operators of the landfill. Such a construction would make all those who supply any type materials to another person liable for use of those materials by that person to commit a trespass merely because of the foreseeability that they might be so used. Neither the applicable section of the Restatement nor any Connecticut case law supports such an expansion of the law of trespass.
The allegations of the complaint are not sufficient to support a cause of action for trespass by the corporate defendants. Count Eleven of the revised complaint is therefore stricken.
 Nuisance (Counts Twelve, Thirteen and Fourteen)
At page 55 of their brief in opposition to the motion to strike of the corporate defendants, the plaintiffs have conceded that the facts pleaded in these counts do not support a cause of action against these defendants in either public or private nuisance. The motion to strike these counts is granted.
 Successor and Subsidiary Liability (Count Sixteen)
In Count Sixteen, the plaintiffs allege that defendants Amphenol Corporation, Electronics Metal Finishing Corporation, and Risdon Corporation "dumped hazardous and toxic waste into the Danbury Landfill." The plaintiffs claim that these defendants are liable to them for clean-up costs pursuant to Conn. Gen. Stat. § 22a-452. The plaintiffs claim that defendants, the Protocol Group, Inc. and American Home Products Corporation, are liable not for any dumping of their own, but for the deeds of other corporate entities that are alleged to have dumped materials at the Danbury landfill.
Specifically, they allege that the Protocol Group, Inc., is liable as the successor in interest to Medallic Art Company "by virtue of having absorbed the latter's assets" (Revised Complaint, paragraph 247) and that American Home Products Corporation "is the parent company of a corporation known as Sherwood-Davis Geck, which, upon information and belief, is a successor-in-interest to an entity known as Davis Geck." (Revised Complaint, paragraph 242.) CT Page 645
While the plaintiffs claim in their brief that both Protocol and American Home Products are liable as successors to dumpers, in fact the allegations of their complaint are that Protocol is liable as a successor but that American Home Products is liable for the dumping of a corporate subsidiary that is itself a successor to another corporation.
 A) Liability for Subsidiary Corporation
The plaintiffs allege "on information and belief" that "American Home Products Corporation is the parent company of a corporation called Sherwood-Davis Geek," which the plaintiffs allege is a successor-in-interest to "an entity known as Davis 
Geek." (Revised complaint, paragraph 242.) The plaintiffs do not allege dumping by American Home Products Corporation or by Sherwood-Davis Geek, but only by David Geek. The plaintiffs thus allege that American Home Products Corporation is a corporation separate from a corporation known as Sherwood-Davis 
Geek. They allege no facts that would support holding one corporation liable for the deeds of the other. The only link that the plaintiffs allege between American Home Products and Sherwood-Davis Geek is that the former is the "parent company" of the latter.
The United States Supreme Court has reaffirmed "the general principle of corporate law that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries" in UnitedStates v. Bestfoods, 118 S.Ct. 1876, 1884 (1998). In Bestfoods, the plaintiff sought to impose liability on the parent company for pollution by the subsidiary. The Court ruled that absent direct participation by the parent corporation in the pollution or facts that would meet common law standards for piercing the corporate veil, the parent is not liable if it has not participated in the polluting activity.
The Connecticut Supreme Court, moreover, has ruled that a corporation may not be held liable for clean-up costs pursuant to Conn. Gen. Stat. § 22a-452(a) unless it has itself committed some act to create the pollution at issue. Connecticut ResourcesRecovery Authority v. Refuse Gardens, Inc., 43 Conn. Sup. 83, 89
(1993), aff'd on appeal, 229 Conn. 455, 642 A.2d 697 (1994). In that case, the entity that was the owner of a landfill at the time of an enforcement action was not alleged to have engaged in CT Page 646 any of the activities claimed to create the pollution. Since Conn. Gen. Stat. § 22a-542(a) imposes liability only if the pollution or contamination complained of "resulted from the negligence or other actions of such person, firm or corporation, " the recent acquirer of the landfill was held not to be liable.
The plaintiffs have not alleged that American Home Products Corporation dumped anything at the Danbury landfill nor that its alleged subsidiary did so. Rather, the dumping is claimed to have been the act of an alleged predecessor of the subsidiary. The plaintiffs have not alleged any facts of conduct that justifies piercing the corporate veil and failing to give effect to separate corporate status. Under the allegations they have made, the plaintiffs do not state a cause of action for a liability pursuant to § 22a-452(a).
The motion to strike the claims against American Home Products Corporation and the Protocol Group, Inc. in Count Sixteen is granted.
 B) Successor
The plaintiff has alleged that the Protocol Group, Inc. is liable for the dumping of a separate corporation, Medallic Art Company, solely because it "absorbed the latter's assets."
The plaintiffs have not alleged simply that Protocol is Medallic's successor, or that Medallic merged with Protocol, but have limited their allegations to the statement that the former corporation "absorbed" the assets of Medallic and that Medallic is Protocol's "predecessor." The issue upon the motion to strike is whether by alleging only an acquisition of assets the plaintiffs have pleaded an adequate basis to disregard the separateness of the two corporations and impose liability on Protocol Group, Inc. for the acts of the former owner of the assets. While a plaintiff's complaint must be viewed in a favorable light upon a motion to strike, light cannot be shed on allegations that the plaintiff has not made. Use of the word "predecessor" is a mere legal conclusion unsupported by any factual allegations. Since the plaintiffs have asserted that Protocol is liable solely because it now owns the assets of Medallic, that is the claim that this court will consider.
The separateness of corporations will be disregarded, i.e., the corporate veil will be pierced, if one seemingly separate corporation controls the other or if separate identities do not CT Page 647 really exist. Angelo Tomasso Inc. v. Armor Construction Paving,Inc., 187 Conn. 544, 553 (1982). A corporation that acquires the assets of another company does not become liable for that company's debts and liabilities unless the purchaser is a mere continuation of the other company, the acquirer has merged with the other company, an agreement provides for assumption of liabilities, or the transaction was entered into for the purpose of escaping liability. Ricciardello v. J. W. Gant Co.,717 F. Sup. 56, 57-58 (D. Conn. 1989.)
In their brief in opposition, the plaintiffs do not claim that they have alleged any basis for successor liability other than acquisition of assets. They have cited no case in which acquisition of the assets of another corporation, without more, made the acquirer liable for environmental torts of the original owner of the assets. In effect, the plaintiffs claim that they are entitled to the benefit of allegations that they have not made, and that they may narrowly allege liability based only on ownership of assets but have the sufficiency of their complaint assessed as though they had alleged that Protocol had merged with Medallic Art Company. The Practice Book authorizes the use of a motion to strike to contest "the legal sufficiency of the allegations of any complaint . . . or any one or more counts thereof, to state a claim upon which relief can be granted." Practice Book § 10-39. If, indeed, the plaintiffs claim a basis for liability against Protocol, they will no doubt allege facts establishing that basis in the repleading authorized by Practice Book § 10-44. The allegations of the current complaint, in which the plaintiffs allege only ownership of the assets of another corporation, are insufficient under the law concerning the separateness of corporations to state a cause of action against the Protocol Group, Inc.
 Conclusion
The motion to strike of the corporate defendants is granted as to Counts Six through Fourteen.
The motion to strike the claims against the Protocol Group, Inc. and American Home Products Corporation in Count Sixteen is also granted.
Accordingly, the only claims that remain against the corporate defendants are the claims in Count Sixteen against defendants Amphenol Corporation, Electronic Metal Finishing CT Page 648 Corporation, and Risdon Corporation.
BEVERLY J. HODGSON Judge of the Superior Court Complex Litigation Docket