[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT 
On November 17, 1995, the plaintiff, Richard N. Jayson, filed an appeal and application for the review of statements of compensation against the defendant, the Urban Redevelopment Commission of the City of Stamford (URC). The appeal challenges the defendant's valuation regarding the plaintiff's property which was taken by the defendant in an eminent domain proceeding in connection with the Gateway District redevelopment. Subsequently, the plaintiff moved for summary judgment arguing that the defendant, as a matter of law, improperly deducted $1,386,727 from the market value of the plaintiff's property due to alleged environmental contamination and impairment.[1] The plaintiff argues that Connecticut case law holds that environmental considerations are not to be taken into account in eminent domain valuation determinations.
On May 26, 2000. four days after the motion had been argued by the parties. the Governor signed into law Public Act (P.A.) 00-89[2] which amends Connecticut General Statutes § 8-132[3]. In response to this new legislation, the defendant filed a supplemental memorandum in opposition to the summary judgment motion. The defendant contends that summary judgment should be denied as a matter of law because the statute is procedural in nature and therefore, has a retroactive effect. The plaintiff maintains that P.A. 00-89 creates a substantive change in the law, not a procedural change, and therefore, it only may be applied prospectively. Furthermore, the plaintiff argues that even if the act is found to be retroactive, it is still fundamentally flawed and unconstitutional on a state and federal level.
A motion for summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Milesv. Foley, 253 Conn. 381, 385, 752 A.2d 503 (2000). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital, 252 Conn. 193, 201, 746 A.2d 730
(2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.)Appleton v. Board of Education of Stonington, 254 Conn. 205, 209,757 A.2d 1059 (2000).
The court first turns its attention to the issue of whether P.A. 00-89
applies to this pending action. Several recent Supreme Court cases are CT Page 702 worthy of the court's attention as they illustrate the debate over the retroactivity of amended legislation. In Oxford Tire Supply v.Commissioner, 253 Conn. 683, 755 A.2d 850 (2000), while the defendant's appeal was pending, an amendment was enacted which affected the legislation at issue in the case. The Supreme Court reversed the lower court decision and held that the legislative history of the statutory provision contemplated a clarification, rather than a change, in the statutory definition of hazardous waste, and therefore, the statute was to apply retroactively.
In determining the outcome, the court stated, "[w]hether to apply [a public act] retroactively or prospectively depends upon the intent of the legislature in enacting the statute. . . .In order to determine the legislative intent, we utilize well established rules of statutory construction. Our point of departure is [Connecticut] General Statutes § 55-3, which states: `[n]o provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect.' The obligations referred to in the statute are those of substantive law. . . .Thus, we have uniformly interpreted §55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . .This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively. . . .Where an amendment is intended to clarify the original intent of an earlier statute. it necessarily has retroactive effect. . . .We generally look to the statutory language and the pertinent legislative history to ascertain whether the legislature intended that the amendment be given retrospective effect." (Emphasis omitted; internal quotation marks added.) Oxford Tire Supply v. Commissioner, supra, 253 Conn. 691-692. TheOxford court found particularly compelling the statements of Representative Widlitz, who introduced the amendment. Widlitz characterized the amendment as "a technical amendment clarifying the meaning of hazardous waste." (Emphasis in original.) Id., 692.
Furthermore, the Oxford court held that "[a]nother factor [that] we have deemed to be significant in determining the clarifying character of legislation is that the legislation was enacted in direct response to a judicial decision that the legislature deemed incorrect." (Internal quotation marks omitted.) Oxford Tire Supply v. Commissioner, supra,253 Conn. 693. The court found the fact that the act "was enacted directly in response to the holding of the trial court in this case," dispositive of its retroactivity. Id., 693.
In Connecticut National Bank v. Giacomi, 242 Conn. 17, 699 A.2d 101
CT Page 703 (1997), the court held that an amendment to a Connecticut Uniform Securities Act statute that encompassed liability for aiding and abetting was intended as a clarification and therefore, was retroactive in its scope. "We presume that, in enacting a statute, the legislature intended a change in existing law. . . .This presumption, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act." (Citations omitted; internal quotation marks omitted.) Id., 39-40. The court found that the major factor which determined the act was a clarification, and therefore. retroactive was the transcript of the legislative debate in which a House Representative stated that the act's effect was "not to change the law, but to clarify what I would consider the law . . . It's not saying something different." (Emphasis omitted.) Id., p. 41.
Finally, in Toise v. Rowe, 243 Conn. 623, 707 A.2d 25 (1998), the Supreme Court reversed the Appellate Court ruling and held that a public act amending legislation was a clarification that should be applied retroactively to confer jurisdiction over appeals from administrative decisions of the bureau of rehabilitation services. The court found that "[s]tatutes passed to resolve a controversy engendered by statutory ambiguity often are deemed to have a clarifying effect." Id., p. 628. In the, case of Toise, the fact that the legislation was enacted promptly after a controversy arose as to the interpretation of the original act was indicative of its retroactive intent and therefore, "it is logical to regard the amendment as a legislative interpretation of the original act." (Internal quotation marks omitted.) Id. The court continued by stating, "[a]s we have noted, once litigation brought [the statutory] ambiguity to light, the legislature acted to remove any doubt about its earlier intentions." (Internal quotation marks omitted.) Id., p. 628-29.
The case before this court is analogous to Oxford, Connecticut NationalBank and Toise. The language of P.A. 00-89 also provides no indication whether the legislature intended that it be applied retrospectively and, as in the case of Oxford, the act also was enacted while the action was pending. Like the legislation at issue in Oxford and Connecticut NationalBank, the pertinent legislative history of P.A. 00-89 contains compelling evidence that the legislature intended to clarify, rather than to change, the considerations upon which a referee may rely when reviewing the statement of compensation. In particular, Representative Davis stated "[t]his technical amendment merely adds — clarifies the conditions for both environmental condition and environmental remediation as part of the report of the referee on eminent domain." (Emphasis added.) (Defendant's memorandum (dated 7/24/00); Exhibit 3, HR. Hearings, 2000 Sess., p. 001898, remarks of Representative Jefferson Davis.) In the CT Page 704 absence of anything in the record to contradict Representative Davis' statement regarding the act's purpose as a clarification, the court affords substantial weight to his characterization of its objective and effect.
Additionally, like Oxford and Toise the present case also contains evidence that the act was enacted in part as a response to a judicial decision. Representative Davis expressly states, "[s]everal recent court decisions have held that evidence of environmental contamination or costs estimates cannot be considered in eminent domain proceedings." (Defendant's memorandum (dated 7/24/00); Exhibit 3, H.R. Hearings, 2000 Sess., p. 001897, remarks of Representative Jefferson Davis.) This response provides reasonable support for the defendant's contention that the legislature intended to clarify, rather than to change, the statute.
The plaintiff argues that P.A. 00-89 cannot be applied retroactively because it substantively affects his vested right to just compensation. The plaintiff, however, improperly relies on the case of Little v. Ives,158 Conn. 452, 262 A.2d 174 (1969). The Little case is inapplicable here because the court in Little found the act at issue to affect a substantive change to the prior law. The court stated: "[t]he act is clearly substantive in nature, its language is clear and unambiguous, and it contains nothing to indicate that it was intended to apply retrospectively . . ." Id., 457. Here, the legislative history indicates that P.A. 00-89 was meant to be a clarification and therefore, procedural in nature.
The concept of retroactivity must, however, be considered in relation to its effect on vested rights. "The retroactive nature of clarifying legislation has limits . . . and must not operate in a manner that would unjustly abrogate vested rights. . . .A vested right is one that equates to legal or equitable title to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exception from a demand made by another." (Internal quotation marks omitted.) Toise v. Rowe, supra, 243 Conn. 631. A retroactive statute, however, that does not affect a vested right may stand. See State v.State Employees' Review Board, 239 Conn. 638, 687 A.2d 134 (1997) (court found that retroactive application of act does not abrogate any vested rights as defendant had no vested right to argue layoff appeal to state employees' review board); State v. Magnano, 204 Conn. 259, 528 A.2d 760
(1987) (court found no abrogation of vested rights by retroactivity of act which amended statutory communications privilege between client and counselor. at battered women's shelter). The court is unpersuaded that the plaintiff's vested right is impaired as he is still entitled to compensation for the defendant's condemnation of his property, even if he must subsequently seek a set off. Consequently, since the clarifying CT Page 705 amendment is retroactive and does not affect the plaintiff's vested rights, the court concludes that the legislature intended P.A. 00-89 to be retroactive.
The court now addresses the plaintiff's constitutional arguments. The plaintiff maintains that the act raises the following constitutional issues: (1) a violation of the separation of powers and an invalid intrusion into the judiciary's determination of "just compensation" in. an equitable proceeding; (2) an equal protection violation under both federal and state constitutions; and (3) a violation of the plaintiff's due process rights because the act may be unconstitutionally vague. "Initially, we note that a party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt. . . .Every presumption is to be given in favor of the constitutionality of a statute." (Citations omitted.) Connecticut National Bank v. Giacomi, supra, 242 Conn. 44.
(1) Violation of separation of powers and the of "just compensation"
The plaintiff argues that the legislature violated the separation of powers when it mandated that environmental evidence be included in the ascertainment of just compensation. The plaintiff maintains that the legislature cannot intrude into the determination of just compensation in an equitable proceeding because the determination is strictly a judicial function. Article first, § 11, of the Connecticut constitution provides: "The property of no person shall be taken for public use, without just compensation therefor."[4] "The amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking. . . . In determining market value, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land." (Citations omitted; internal quotation marks omitted.) Robinson v. Westport, 222 Conn. 402, 405,610 A.2d 611 (1992).
The plaintiff relies on the decision in Leverty Hurley Co. v.Commissioner of 1 Transportation, 192 Conn. 377, 471 A.2d 958 (1984), which states: "[t]he determination of just compensation under thefifth
amendment is exclusively a judicial function. . . In condemnation cases . . . the constitution requires just compensation, and its ascertainment is a judicial function." (Citations omitted; internal quotation marks omitted.) Id., 380. The doctrine of separation of powers and its impact on just compensation as a judicial function, however, also must be addressed. "Recognizing that executive, legislative and judicial powers frequently overlap, [the Connecticut Supreme Court has] consistently held that the doctrine of the separation of powers cannot be applied rigidly. CT Page 706 . . .In the context of challenges to statutes whose constitutional infirmity is claimed to flow from impermissible intrusion upon the judicial power, [the Connecticut Supreme Court has] refused to find constitutional impropriety in a statute simply because it affects the judicial function. . . .A statute violates the constitutional mandate for a separate judicial magistracy only if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts. . . or if it establishes a significant interference with the orderly conduct of the Superior Court's judicial functions." (Citations omitted; internal quotation marks omitted.) Bartholomew v.Schweizer, 217 Conn. 671, 676-77, 587 A.2d 1014 (1991).
In the present case, the determination of just compensation resides in the exclusive control of the judiciary and the enactment of P.A. 00-89
does not impermissibly intrude upon this judicial function. P.A. 00-89
does not remove the ascertainment of just compensation from the judiciary. Under the original wording of General Statutes § 8-132, the court "shall appoint a state referee to make a review of the statement of compensation." The amendment does not change that procedure, except to allow the state referee to consider environmental factors in his review. The language of P.A. 00-89 states that the refereeshall take into account environmental factors. It does not, however, conclusively proscribe the weight to be given to environmental factors in any given case. Consequently, there is no usurpation of judicial authority because of the amended statutory language.
(2) Violation of equal protection under federal and state constitutions 
The plaintiff argues that the act only affects property owners who had a taking by a municipal redevelopment agency. Therefore, the plaintiff concludes that the act deprives the plaintiff and other similar property owners of protection under Connecticut General Statutes § 22a-452[5]
"Section 22a-452(a) provides for reimbursement for contamination removal costs where the pollution or contamination resulted from the negligence or other actions of such person, firm or corporation. InConnecticut Resources Recovery Authority v. Refuse Gardens, Inc.,43 Conn. Sup. 83, 642 A.2d 762, aff'd 229 Conn. 455, 642 A.2d 697
(1994), the court ruled that liability under § 22a-452(a) must be based on culpability and not merely causation." (Internal quotation marks omitted.) Blackburn v. Miller-Stephenson Chemical Co., Superior Court, judicial district of Danbury at Danbury, Docket No. 314089 (September 11, 1998, Leheny, J.). The plaintiff maintains that under the language ofP.A. 00-89, environmental factors are deducted regardless of culpability, and therefore, he is held to a strict liability standard unlike other property owners who did not have a taking by a municipal CT Page 707 redevelopment agency and may rely upon § 22a-452.
"When a statute is challenged on equal protection grounds, whether under the United States constitution or the Connecticut constitution[6], the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. . . .If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Internal quotation marks omitted.) Kostrzewski v. Commissioner of Motor Vehicles, 52 Conn. App. 326,339-340, 727 A.2d 233 (1999).
"In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." (Citations omitted; Internal quotation marks omitted.) Stafford Higgins Industries, Inc. v.City of Norwalk, 245 Conn. 551, 568, 715 A.2d 46 (1998). "Therefore, the presumption of constitutionality can be overcome only by the most explicit demonstration that the classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." (Emphasis omitted; internal quotation marks omitted.) Stafford Higgins Industries, Inc. v. City ofNorwalk, supra, 569.
In this case, from a procedural standpoint, the plaintiff does not claim that the statute impinges on a suspect class or a fundamental right, nor is there a basis for such a claim. The court in ConnecticutNational Bank addressed this very issue. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . .Although the plaintiff claims that the amendment created classifications unrelated to a legitimate state interest, it did not specify what classifications it thought the amendment created, nor did it discuss the rationality of such classifications. We decline to address such a broad and undeveloped claim." (Citations omitted.)Connecticut National Bank v. Giacomi, supra, 242 Conn. 44-45. Under this standard, therefore, this court is not required to consider the plaintiff's equal protection argument. CT Page 708
Even if this court were to address the plaintiff's argument substantively, however, under the rational relationship standard, the plaintiff's challenge fails as the act is related to the legitimate government purpose of assessing a variety of factors in an eminent domain proceeding. Additionally, the language of P.A. 00-89 states: "[t]he referee shall make a separate finding for remediation costs and theproperty owner shall be entitled to a setoff of such costs in any pending or subsequent action to recover remediation costs for the property." (Emphasis added.) While the plaintiff may not be afforded the protection of § 22a-452, P.A. 00-89 continues to provide a remedy for the plaintiff to receive a reimbursement for environmental considerations. Consequently, the court finds that there is no equal protection violation because the act is rationally related to a legitimate government purpose and provides a mechanism for the plaintiff to bring a subsequent action to recover remediation costs.
(3) Unconstitutional vagueness and denial of due process.
The plaintiff argues that the language of the act is vague because it does not define the standards or restrictions for the remediation. Additionally, the plaintiff asserts that the language of the act is vague because it does not indicate whether the court should consider the quickest and most costly type of remediation, or a less costly alternative. "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution." Packer v. Board of Education, 246 Conn. 89, 98, 717 A.2d 117
(1998). "The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement." (Internal quotation marks omitted.) State v. Payne, 240 Conn. 766, 777, 695 A.2d 525 (1997). "A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . .Because perfect precision is neither possible nor required . . . the [vagueness] doctrine does not mandate the invalidation of all imprecisely drafted statutes. Rose v. Locke, 423 U.S. 48, 49, 96 S.Ct. 243,46 L.Ed.2d 185 (1975) . . ." (Citations omitted; internal quotation marks omitted.) Sweetman v. State Elections Enforcement Commission ,249 Conn. 296, 322, 732 A.2d 144 (1999). "Thus, in order to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited. . . .Furthermore, as a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue." CT Page 709 (Citations omitted; internal quotation marks omitted.) State v. Payne, supra, 777.
In this case, making every presumption in favor of the act's validity, the act does not reach the threshold of vagueness under the doctrine just because it does not articulate remediation standards. P.A. 00-89 affords a person of ordinary intelligence a reasonable opportunity to know that evidence of environmental conditions and remediation would be considered by a referee when he reviews the compensation statement. Therefore, the court concludes that any ambiguities in the statutory language are not so significant as to render it void for vagueness.[7]
 Overall, the court is unpersuaded by the plaintiff's constitutional arguments. The court finds that P.A. 00-89 is a procedural amendment to Connecticut General Statutes § 8-132 and as such is retroactive in its effect. Accordingly, the plaintiff's motion for summary judgment is denied. So Ordered.
D'ANDREA, J.