[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS TO STRIKE #155 AND #157
 I. FACTS
On September 20, 1999, the plaintiff, French Putnam, LLC, filed a revised forty-two count complaint, with six counts against each of the seven defendants, County Environmental Services, Inc. (CE Services), County Environmental Systems, Inc. (CE Systems), Sam Testa and Ann Testa (the Testas), Edward Alfveby, Anton Tantalos and C.R. Warner, Inc., alleging negligence, reimbursement pursuant to General Statutes §22a-452, negligence per se, recklessness, strict liability for ultrahazardous activity and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110 et seq.
The revised complaint alleges the following facts: The defendants Sam Testa and Ann Testa acquired the subject property in 1981, which acquisition included real property, buildings and structures located at 35-37 Putnam Avenue in Norwalk, Connecticut. The Testas operated a construction business on the property until 1996. They allegedly used the property for the storage of construction equipment and materials and the mining of gravel and sand and allowed disposal of construction debris on the property. In addition, the Testas leased a portion of the property to CE Services and CE Systems, two waste transportation enterprises. CE Services and CE Systems brought waste oil, solvents and other materials onto the property and stored them in large above ground tanks and drums CT Page 8649 on the property without appropriate permits. The defendants Tantalos and Alfveby, the president and manager of CE Services, respectively, were responsible for managing CE Services and overseeing its daily operations. The plaintiff purchased the property in June, 1996 from the Testas' former mortgagee, which had foreclosed on the mortgage in January, 1996.
The soil and groundwater of the subject property contains, or contained, levels of hazardous materials in excess of those permitted by law, which were allegedly discharged on the property prior to June 13, 1996, the date the plaintiff purchased the property. The Testas, CE Services, CE Systems, Alfveby and Tantalos were allegedly responsible for bringing numerous chemicals and hazardous materials onto the property and for permitting such chemicals and hazardous materials to be discharged on the property. Defendant C.F. Warner, Inc. allegedly owned and/or operated the storage tanks located on the property at the time the hazardous materials were discharged.
The plaintiff claims damages in the form of costs incurred in relation to the investigation of the nature and extent of the contamination costs related to mitigation of the contamination and diminished value of the property.
On November 9, 1999, defendants CE Services, Tantalos and Alfveby jointly filed a motion to strike accompanied by a supporting memorandum of law. On December 2, 1999, defendant CE Systems filed a motion to strike all counts and prayers for relief pertaining to CE Systems. The only ground expressly raised in both motions is the caveat emptor doctrine.[1] CE Systems adopted, in its entirety, the memorandum of law in support of defendants CE Services, Tantalos and Alfveby's motion to strike. On January 13, 2000, the plaintiff filed a memorandum of law in opposition to the motions to strike.
 II. DISCUSSION
Practice Book § 10-39(a) provides in pertinent part: "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof." See also Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270, 709 A.2d 558 (1998).
 A. NEGLIGENCE
The defendants move to strike counts fifteen, sixteen, nineteen and CT Page 8650 twenty of the revised complaint alleging negligence against CE Services, CE Systems, Alfveby and Tantalos, respectively. They move to strike the negligence counts on the ground that these claims do not state legally sufficient causes of action upon which relief may be granted. In relevant part, the defendants argue that a cause of action for common law negligence cannot be stated because no duty exists between themselves, as former lessees of the former property owner, and the plaintiff, the subsequent property owner. In support of their argument, the defendants rely on the doctrine of caveat emptor[2] for the proposition that it bars claims by subsequent property purchasers against lessees of the former property owners. The defendants also rely on Wiehl v. DictaphoneCo., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 306492 (February 11, 1998, Mottolese, J.) (21 Conn.L.Rptr. 402).
The defendants further argue that the plaintiff had the responsibility and the opportunity to inspect the property, to examine appropriate land and department of environmental protection records and to obtain environmental disclosure letters. They assert that, had the plaintiff exercised due diligence in inspecting the property, the environmental contamination would have been discovered prior to purchasing the property and would have been taken into account in the negotiated price. They also assert that, in the event the plaintiff was an "innocent" purchaser without knowledge of the environmental contamination, the appropriate remedy is against the seller pursuant to General Statutes § 22a-134b.
In opposition, the plaintiff argues that the elements of common law negligence have been sufficiently alleged to withstand the defendants' motions to strike. The plaintiff contends that the determination of whether a duty of care exists is dependent on whether the harm was foreseeable. The plaintiff asserts that it has alleged that the defendants used the property to store hazardous materials and knew or reasonably should have known that hazardous contaminants were being discharged from the materials and negatively impacting the property. The plaintiff concludes, therefore, that the resultant contamination of the property was reasonably foreseeable and a duty of care should have been exercised by the defendants. The plaintiff maintains that Wiehl v.Dictanhone Co., supra, 21 Conn.L.Rptr. 402, the case on which the defendants rely, is distinguishable because that court's analysis did not address the requisite "foreseeability of harm" inquiry in determining the existence of a duty of care.
"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. RKConstructors, Inc. v. Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153
(1994). Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so. Dean v.CT Page 8651Hershowitz, 119 Conn. 398, 407-408, 177 A. 262 (1935). A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act. Coburn v. Lenox Homes,Inc., 186 Conn. 370, 375, 441 A.2d 620 (1982). What duty the defendant had, if any, is a question of law. Nolan v. The New York, New Haven Hartford Railroad Co., 53 Conn. 461, 471, 4 A. 106 (1885). The issue of whether the defendant owed the plaintiff a duty of care is an appropriate one for a motion to strike because the question embodies a matter of law to be decided by the court. Gordon v. Bridgeport Housing Authority,208 Conn. 161, 171, 544 A.2d 1185 (1988)." (Internal quotation marks omitted.) Bennett v. Connecticut Hospice, Inc., 56 Conn. App. 134, 137,741 A.2d 349 (1999), cert. denied, 252 Conn. 938, 747 A.2d 2 (2000).
The Supreme Court has stated that the test for determining the existence of a legal duty of care involves a two prong inquiry: "(1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." Lodge v. Arett Sales Corp., 246 Conn. 563, 572, 717 A.2d 215
(1998). As to the foreseeability prong, "[t]he ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person], in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" (Internal quotation marks omitted.) Lombard v. Edward J.Peters. Jr., P.C., supra, 252 Conn. 633. As to the second prong regarding policy considerations, the Supreme Court has stated that "[t]he fundamental policy purposes of the tort compensation system [are] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct. . . . It is sometimes said that compensation for losses is the primary function of tort law . . . [but it] is perhaps more accurate to describe the primary function as one of determining when compensation is required. . . . An equally compelling function of the tort system is the `prophylactic' factor of preventing future harm. . . . The courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer. . . . [I]mposing liability for consequential damages often creates significant risks of affecting CT Page 8652 conduct in ways that are undesirable as a matter of policy. Before imposing such liability, it is incumbent upon us to consider those risks." Lodge v. Arett Sales Corp., supra, 246 Conn. 578-79.
"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant." (Citations omitted; internal quotation marks omitted.) RKConstructors, Inc. v. Fusco Corp., 231 Conn. 381, 385, 650 A.2d 153
(1994).
"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally `foreseeable,' yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that `duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Citations omitted; internal quotation marks omitted.) Id., 386.
The doctrine of caveat emptor has been treated differently by those Superior Court judges having occasion to analyze the doctrine's application in the present context, i.e., where a common law negligence claim for environmental contamination is brought by a subsequent property owner against the lessee of the previous property owner. In Wiehl v.Dictaphone Co., supra, 21 Conn.L.Rptr. 402-403, the court struck a negligence count after addressing, as an issue of first impression, whether lessees of former property owners owed a duty to subsequent property purchasers to exercise care in the use of contaminants on the property. That court found that mere forseeability of harm is not enough for imposition of a duty and that "inquiry must be made as to whetherunder the fundamental policy of the law, the defendant's responsibility should extend to such results . . ." (Citation omitted; internal quotation marks omitted; emphasis added.) Id., 403. That court stated that such a case involves two competing fundamental policies of law: (1) CT Page 8653 Connecticut's strong policy against environmental contamination; and (2) the common law doctrine of caveat emptor. While observing that the caveat emptor doctrine has not precluded liability in special cases such asCoburn v. Lenox Homes, Inc., 186 Conn. 370, 375, 441 A.2d 620 (1982), which involved the defective construction of buildings and other appurtances by builder-vendors of real property, the court in Wiehl v.Dictaphone Co., supra, 21 Conn.L.Rptr. 403, did employ the doctrine of caveat emptor. The Wiehl court reasoned that the fundamental policy of law provides protections to those having no opportunity to protect themselves and that "the rationale upon which the doctrine of caveat emptor is based applies here." Id., 403. That court noted that a purchaser of real property may take measures to discover harm, inspect the premises, and negotiate the terms and conditions of the purchase. Id. TheWiehl court relied on policy considerations when it held that the doctrine of caveat emptor precludes a subsequent purchaser from asserting a common law cause of action for negligent contamination of commercial property against the lessees of the. previous property owners. Id. But seeCadlerock Properties v. Schilberg, Superior Court, judicial district of Tolland at Rockville, Docket No. 69263 (February 25, 2000, Sullivan,J.), denying the defendant lessee's motion to strike the common law negligence and recklessness claims brought against it by the subsequent property owner for alleged contamination of the property. That court noted that the application of the caveat emptor doctrine has diminished in recent years and that it is completely foreseeable that the subsequent purchaser of polluted property would have to clean up the property once the pollution is discovered and, therefore, found that a lessee that contaminates land and water can be liable in negligence to the subsequent property purchaser. See id. That court reasoned that "the duty to not pollute [does not extend] only to the benefit of the then land owner, as it may appear foreseeable that the fact of pollution and its cause may well not surface until after the original owner transfers property to a subsequent purchaser . . . [and that] the specific risk of the pollution from a damages/liability standpoint is that the owner, present or future, is going to be responsible for clean up when the pollution is then discovered, and this is completely foreseeable." Id. The decisions in Wiehl v. Dictanhone Co., supra, 21 Conn.L.Rptr. 403, and CadlerockProperties v. Schilberg, supra, Docket No. 69263, do not address both prongs of the analysis for determining the existence of a duty of care to state a negligence claim. The Wiehl court based its decision on the policy considerations prong, whereas the Cadlerock court based its decision on the foreseeability of harm prong.
In Coburn v. Lenox Homes, Inc., supra, 186 Conn. 375-76, relied upon by the plaintiff, the Supreme Court affirmed that a builder-vendor of a house with a negligently designed and installed septic system owed a duty of care to the second owners of the property, who purchased it from the CT Page 8654 original buyers, because the testimony and documentary evidence at trial showed that the defendant should have known that the septic system it designed and installed was likely to fail in the manner it did. This court finds that Coburn v. Lenox Homes, Inc., supra, 186 Conn. 370, is distinguishable from the present case. That case involved defective residential construction by the former property owner who had built and designed the septic system. Id., 373-74. Moreover, the court in Coburnv. Lenox Homes, Inc., supra, 186 Conn. 370, did not have occasion to expressly address the caveat emptor doctrine because the defendant builder-vendor did not raise it as a challenge to the negligence claim.
In Connecticut Resources Recovery Authority v. Refuse Gardens, Inc.,229 Conn. 455, 458 n. 5, 642 A.2d 697 (1994), the court, citing, in pertinent part, to Coburn v. Lenox Homes, Inc., supra, 186 Conn. 375, stated that "the imposition of liability for negligence on former landowners is a substantial deviation from the common law rule of caveat emptor. The common law rule continues to have vitality even though it has given way to liability for negligence in special cases such as those involving the defective construction of buildings or their appurtenances by builder-vendors of real property." Id. Although the court inConnecticut Resources Recovery Authority v. Refuse Gardens, Inc., supra, was not directly addressing the applicability of the caveat emptor doctrine in that case,[3] that court's discussion of the doctrine is persuasive.
Additionally, in ABB Industrial Systems v. Prime Technology, Inc.,120 F.3d 351 (2d Cir. 1997), the purchaser of real property sued the previous chain of owners for environmental clean up costs alleging, inter alia, that each negligently contaminated the property. The circuit court, upon reviewing the district court's grant of summary judgment for the defendants, noted that "[the purchaser] pleaded a common law negligence claim but not a claim under section 22a-452 (a) raises novel issues of Connecticut law. Connecticut could treat a common law negligence claim that falls within section 22a-452 (a) as arising under that section. On the other hand, Connecticut could treat such a claim like any other common law negligence claim. The distinction could be crucial." Id., 359-60. The circuit court in ABB Industrial Systems v.Prime Technology, Inc., supra, 120 F.3d 360, cited Connecticut ResourcesRecovery Authority v. Refuse Gardens, Inc., supra, 229 Conn. 456-58 n. 5, for the proposition that "[t]he Connecticut Supreme Court has indicated that the doctrine of caveat emptor generally bars common law negligence claims but does not bar claims under [General Statutes §]22a-452 (a)."[4]
Recently, this court in Piantidosi v. Dragone, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 174606 (June 28, CT Page 8655 2000, D'Andrea, J.), addressed, on a motion to strike, whether a subsequent property purchaser can state a negligence claim against the professional environmental testing company that performed tests for the seller's previous owner to determine if the underground oil storage tank was or had been leaking. Although this court struck the negligence claim for failure to sufficiently allege foreseeability of harm, this court noted that the subsequent property purchaser was not precluded as a matter of law from asserting a negligence claim against the environmental testing company. This court reasoned that "[i]f foreseeability is sufficiently alleged or established, courts have determined that the nature of the relationship between third parties and certain professionals . . . permits the professionals to be held liable for the foreseeable consequences of their negligent conduct, even in the absence of privity." Id. That case is distinguishable from the present case with respect to the nature of the relationship between the parties. See id. That case, unlike the present case, involves a defendant who allegedly negligently performed professional services for a previous property owner. See id. Also, in that case the defendant did not raise the caveat emptor doctrine, and policy considerations did not dictate that the environmental testing company could not be held liable. See id.
Returning to the two prong analysis for determining the existence of a duty of care in the present case, policy considerations and the Supreme Court's dicta in Connecticut Resources Recovery Authority v. RefuseGardens, Inc., supra, 229 Conn. 456-58 n. 5, weigh in favor of applying the rule of caveat emptor. The law provides protection to purchasers of real property in cases where, for example, the seller makes negligent misrepresentations regarding the condition of the property.[5] The plaintiff has not pleaded any allegations that any exceptions to the caveat emptor doctrine apply in this case. The plaintiff has not fulfilled its burden of alleging facts necessary to preclude the imposition of the doctrine of caveat emptor. Additionally, the plaintiff has not alleged that it purchased the property without knowledge that the property had been contaminated by hazardous waste.[6] Accordingly, this court strikes counts fifteen, sixteen, nineteen and twenty of the plaintiff's revised complaint.
B. REIMBURSEMENT PURSUANT TO GENERAL STATUTES § 22a-452
In counts one, two, five and six, the plaintiff has alleged that it is entitled to reimbursement from CE Services, CE Systems, Alfveby and Tantalos for the environmental decontamination costs of the property as well as property value diminution and lost use of the property, pursuant to General Statutes § 22a-452. The defendants move to strike these counts on the ground that the plaintiff has failed to allege a legally sufficient claim. In response, the plaintiff counters that it has alleged CT Page 8656 sufficient facts to maintain the statutory reimbursement claim for monies expended in removing, containing and mitigating the environmental contamination on the property.
The defendants argue that negligence is a requisite element of a claim pursuant to General Statutes § 22a-452 and that the plaintiff cannot establish negligence against them as a matter of law. They assert that the caveat emptor doctrine bars the plaintiff's statutory reimbursement claim because no duty exists between them, as former lessees of the former property owners, and the plaintiff, a subsequent property owner, to satisfy the duty element of negligence. The defendants further argue that the plaintiff has failed to allege culpability, the second essential element of a claim pursuant to General Statutes § 22a-452, and, consequently, the statutory reimbursement counts are legally insufficient.
The plaintiff counters that General Statutes § 22a-452, itself, permits recovery by any person incurring environmental decontamination costs relating to property contaminated by another's negligent actions. The plaintiff relies on ABB Industrial Systems v. Prime Technology,Inc., supra, 120 F.3d 351, in which the second circuit noted that Connecticut's Supreme Court has indicated that the doctrine of caveat emptor does not bar claims pursuant to General Statutes § 22a-452. The plaintiff also cites federal appellate cases[7] for the proposition that, just as caveat emptor is not a defense to a claim under the federal Comprehensive Environmental Response Compensation and Liability Act (CERCLA), it is also not a defense to a claim under General Statutes § 22a-452, which is modeled after CERCLA. In sum, the plaintiff's position is that application of the doctrine of caveat emptor would contravene the purpose of General Statutes § 22a-452 to provide a litigant with a cause of action to obtain reimbursement for environmental decontamination costs from those responsible. Additionally, the plaintiff reiterates that the defendants owed it a common law duty of care because it was reasonably foreseeable that their contamination of the property would affect subsequent owners and occupiers of the property and, thus, the negligence element of a claim pursuant to General Statutes §22a-452 is satisfied. The plaintiff also contends that it has alleged sufficient facts to satisfy the culpability element of a claim pursuant to General Statutes § 22a-452.
General Statutes § 22a-452 (a) provides: "Any person, firm,corporation or municipality which contains or removes or otherwisemitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement fromCT Page 8657any person. firm or corporation for the reasonable costs expended forsuch containment, removal, or mitigation. if such oil or petroleum orchemical liquids or solid, liquid or gaseous products or hazardous wastespollution or contamination or other emergency resulted from the negligenceor other actions of such person, firm or corporation. When such pollution or contamination or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby." (Emphasis added.)
Two elements, causation and culpability, must be alleged to maintain a claim pursuant to General Statutes § 22a-452. Connecticut ResourcesRecovery Authority v. Refuse Gardens, Inc., 43 Conn. Sup. 83, 90,642 A.2d 762 (1993), aff'd, 229 Conn. 455, 458, 642 A.2d 697 (1994). InConnecticut Resources Recovery Authority v. Refuse Gardens, Inc., supra,229 Conn. 458, the Supreme Court, in affirming the trial court, characterized the issue as whether General Statutes § 22a-452 imposes strict liability on a prior landowner of environmentally contaminated property for a subsequent owner's clean up costs. The Supreme Court observed that "[t]he trial court concluded that the legislature intended § 22a-452 (a) to require a showing of culpability and not merely causation. Because the plaintiff had not alleged such culpability on the part of the defendants, the [trial] court denied the plaintiff's application for a prejudgment remedy." Id., 458. The Supreme Court agreed with the trial court and adopted its "well reasoned decision as a correct statement of the facts and the applicable law on the contested issue." Id., 458. "The use of the phrase `resulted from the negligence or other actions of such person, firm or corporation' in § 22a-452 (a) can be interpreted to mean only that the legislature intended § 22a-452 (a) to be based on culpability and not merely causation. . . . We fail to see how the use of the term `other actions' in § 22a-452 (a) could negate the meaning of the word `negligence,' which immediately precedes it. To read the term `other actions' so as to convert § 22a-452 (a) into liability without fault would cause us to consider the term `negligence' as either insignificant or unnecessary." (Citations omitted.) ConnecticutResources Recovery Authority v. Refuse Gardens, Inc., supra, 43 Conn. Sup. 90.
In ABB Industrial Systems v. Prime Technology, Inc., supra, 120 F.3d 351, the second circuit, citing Connecticut Resources Recovery Authority v.Refuse Gardens, Inc., 229 Conn. 455, 456-58 n. 5 (1994), stated that "[t]he Connecticut Supreme Court has indicated that the doctrine of caveat emptor generally bars common law negligence claims but does not bar claims under section 22a-452 (a)." Application of the caveat emptor doctrine would eviscerate the plain meaning of the statutory language to CT Page 8658 provide a private cause of action for "any person" incurring clean up costs as a result of environmental contamination against those responsible. See Cadlerock Properties v. Schilberg, Superior Court, judicial district of Tolland at Rockville, Docket No. 69263 (February 25, 2000, Sullivan, J.) (denying a motion to strike a claim under General Statutes § 22a-452 by the subsequent owner of the property against the lessees of the former owner upon refuting the lessees' arguments on the basis that the doctrine of caveat emptor has been diminished in recent years and that it is foreseeable to a polluter that the present or future owner will be saddled with the clean up costs when the pollution is discovered).
The plaintiff sufficiently alleges the causation and culpability elements of General Statutes § 22a-452. With respect to the causation element, the plaintiff alleges that the defendants caused the discharge, or permitted the discharge, of hazardous materials on the property when they stored and used the hazardous materials. The plaintiff further alleges that the defendants knew or should have known that their conduct would result in soil and ground water contamination and that as a proximate result of their conduct it has been injured in having to incur the costs of containing, removing and mitigating the pollution effects. As to the culpability element, General Statutes § 22a-452 requires "negligence or other conduct." The failure to satisfy the duty element of negligence does not bar a claim under General Statutes § 22a-452
provided that other culpable conduct is alleged. The plaintiff alleges that the defendants engaged in culpable conduct. Specifically, the plaintiff alleges that the defendants brought hazardous materials onto the property and stored them in above ground tanks and drums on the property without appropriate permits. The plaintiff further alleges that the defendants discharged or permitted the discharge of hazardous materials on the property in the course of their business operations and that the defendants, as former operators of the property, had a duty to exercise care in using the property and the storage tanks in a reasonable manner to avoid an unlawful discharge and contain or remediate any resultant effects. Based on the foregoing allegations, the plaintiff does state a claim upon which relief can be granted for reimbursement of environmental decontamination costs under General Statutes § 22a-452. The defendants' motions to strike counts one, two, five and six is denied.
 C. NEGLIGENCE PER SE
In counts twenty-two, twenty-three, twenty-six and twenty-seven, respectively, the plaintiff has alleged that defendants CE Services, CE Systems, Alfveby and Tantalos were each negligent per se in violation of General Statutes §§ 22a-114, et seq., the statutory provisions governing hazardous waste, and General Statutes §§ 22a-427, 22a-430, CT Page 865922a-449, 22a-450, 22a-452, the statutory provisions contained in Connecticut's Water Pollution Control Act (WPCA). The defendants move to strike the negligence per se counts on the ground that they are legally insufficient. They argue that the statutes cited by the plaintiff are part of an administrative scheme and cannot be used as a separate cause of action under a theory of negligence per se. In support of their argument, the defendants rely on several Superior Court decisions for the proposition that the legislature did not intend to allow negligence per se actions under the WPCA; General Statutes §§ 22a-416 through22a-484; because it is a broad administrative scheme. The defendants also argue that, although negligence per se means that a breach of a duty is inferred from a violation of the statute, there must be an existing duty in the first place to be breached by inference and that no duty exists in the present case. The defendants reiterate that no duty runs from them, as former lessees of the previous landowner, to the plaintiff as the subsequent purchaser.
The plaintiff counters that it has alleged a cognizable claim because the statutes cited establish a standard of care, it has alleged a breach of those statutes, it is within the class of persons the statutes were enacted to protect, the injuries and damages it sustained were of the type the statutes were intended to prevent, and it was injured as a proximate result of the statutory violations.
This court has previously sustained a negligence per se cause of action pursuant to General Statutes § 22a-427; see Walker v. Barrett,
Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 169673 (November 8, 1999, D'Andrea, J.); and has recognized that "[t]here is a split of authority as to cases sustaining negligence per se actions pursuant to General Statutes § 22a-427." Id. In Walker v.Barrett, supra, Superior Court, Docket No. 169673, purchasers of a house brought suit against the sellers for allegedly concealing sewage problems with the property by running piping from the septic system to emit waste into a storm drain. This court denied the sellers' motion to strike the purchasers' negligence per se claim, ruling that a private cause of action pursuant to General Statutes § 22a-427 is sustainable when negligence per se is alleged. This court reasoned that, as inhabitants of the state, the purchasers were within the class of persons protected by the statute and they sustained the type of injury the statute was designed to prevent — the contamination of water of this state. This court further noted that "[s]ome Superior Courts have rigorously applied a two-prong test finding a negligence per se action sustainable pursuant to the statute where inter alia allegations of state water pollution have been made." Id.
Similarly, in Goodrich v. Jennings, Superior Court, judicial district CT Page 8660 of Stamford-Norwalk at Stamford, Docket No. 150074 (May 22, 1997, Mintz,J.) (19 Conn.L.Rptr. 544, 544-45), the court denied a motion to strike a negligence per se action based on General Statutes §§ 22a-427,22a-430 and 22a-450 of the WPCA on the basis that the plaintiff was within the class of persons protected by these statutes and sustained the type of injury these statutes were intended to prevent. The court reasoned that "[t]he doctrine of negligence per se serves to superimpose a legislatively prescribed standard of care on the general standard of care." (Internal quotation marks omitted.) Goodrich v. Jennings, supra,19 Conn.L.Rptr. 545. The court emphasized that the plaintiffs were seeking to adopt those sections of the WPCA as the standard of care in their negligence claim and were not interpreting those statutes to provide a private cause of action under the WPCA. Id. Similarly, inBlackburn v. Miller-Stephenson Chemical Co., Inc., Superior Court, judicial district of Danbury, Docket No. 314089 (January 12, 1995,Stodolink, J.) (13 Conn.L.Rptr. 364), the court denied a motion to strike a negligence per se claim by a property owner based on alleged violations of General Statutes §§ 22a-427, 22a-430 and 22a-454 by a neighboring property owner for contaminating a private on-site well that provided water for drinking and domestic use. That court found that the plaintiff sufficiently alleged that the defendant's statutory violations caused contamination of her property and reasoned that "[i]f a plaintiff alleges that a statute, ordinance or regulation has been violated, thereby relying on negligence per se, and also alleges that there is a causal connection between such negligence and the injuries sustained, a cause of action has been stated." (Internal quotation marks omitted.) Id., 366, quoting Commercial Union Ins. Co. v. Frank Perrotti Sons,Inc., 20 Conn. App. 253, 258, 566 A.2d 431 (1989); but see ConnecticutWater Co. v. Thomaston, Superior Court, judicial district of Hartford at Hartford, Docket No. 535590 (March 4, 1996, Corradino, J.) (16 Conn. L. Rptr. 213, 213-15) (striking a negligence per se claim under General Statutes §§ 22a-427, 22a-430 and 22a-450 on the ground that no private cause of action based on these statutes can be a basis for negligence per se claims); cf. Wiehl v. Dictaphone Corp., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 306492 (January 13, 1994, Maiocco, J.) (10 Conn.L.Rptr. 591, 593) (granting a motion to strike a negligence per se claim pursuant to General Statutes § 22a-427
on the ground that such claim is legally insufficient because the statute does not create a private cause of action); Reiser v. IslandTransportation Co., Superior Court, judicial district of Danbury, Docket No. 332521 (May 2, 2000, Radcliffe, J.) (26 Conn.L.Rptr. 642, 644) (denying summary judgment on the ground that violation of General Statutes §§ 22a-427 and 22a-430 does not support a negligence per se claim because these statutes are part of a broad regulatory scheme although they may serve as evidence of negligence); Bernbach v. TimexCorp., 989 F. Sup. 403, 408, (D. Conn. 1996) (district court dismissed a CT Page 8661 negligence per se count based on the WPCA violation because persuaded by the number of Connecticut cases holding that the legislature did not intend to provide private parties with negligence per se actions for WPCA violations).
"[U]nder general principles of tort law, a requirement imposed by statute may establish the applicable standard of care to be applied in a particular action. It is well established that [i]n order to establish liability as a result of a statutory violation, a plaintiff must satisfy two conditions. First, the plaintiff must be within the class of persons protected by the statute. . . . Second, the injury must be of the type which the statute was intended to prevent." (Citations omitted; internal quotation marks omitted.) Gore v. People's Savings Bank, 235 Conn. 360,375-76, 665 A.2d 1341 (1995). "Negligence per se operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles, i.e., that standard of care to which an ordinarily prudent person would conform his conduct. To establish negligence, the jury in a negligence per se case need not decide whether the defendant acted as an ordinarily prudent person would have acted under the circumstances. They merely decide whether the relevant statute or regulation has been violated. If it has, the defendant was negligent as a matter of law. . . ." (Citation omitted; internal quotation marks omitted.) Id., 376.
In the negligence per se counts, the plaintiff has alleged that the defendants' "improper use, storage treatment or Discharge of the . . . Hazardous Materials is prohibited by applicable law, including but not limited to Conn. Gen. Stat. §§ 22a-114 et seq.; 22a-427; 22a-430;22a-449; 22a-450; 22a-452; and the regulations promulgated thereunder." (Revised Complaint, Count 22, ¶ 37.) The plaintiff has further alleged that "[t]he foregoing prohibitions are intended to protect the citizens of the state of Connecticut and the United States from physical and economic harm" and that "[it] is within the class of persons protected by the statutes, and it has suffered injury of the type which the statutes were intended to prevent." (Revised Complaint, Count 22, ¶ 38-39.) It has further alleged that "[a]s a proximate result of the foregoing, French has been injured in that it has expended costs to investigate, contain, remove or mitigate the effects of such Hazardous Materials." (Revised Complaint, Count 22, ¶ 40.)
The plaintiff has sufficiently alleged facts to maintain its negligence per se claims against each movant for alleged violations of General Statutes §§ 22a-427[8] and 22a-452. The plaintiff has alleged that as a business enterprise owning property and having its principal place of business in this state that it is within the class protected by the statute. The plaintiff has also alleged that it has sustained the type of CT Page 8662 injury the statute was intended to protect against — the environmental contamination of the water and land in this state and the economic losses from resultant environmental decontamination costs. The plaintiff further alleges that the defendants' statutory violations, such as discharge of hazardous materials, caused contamination of its property, and caused it to expend monies to remove and mitigate the effects of the hazardous materials. The plaintiff has alleged the required elements to maintain the negligence per se claims. Accordingly, the court denies the defendants' motions to strike the negligence per se claims in counts twenty-two, twenty-three, twenty-six and twenty-seven of the plaintiff's revised complaint.
 D. RECKLESSNESS
The plaintiff has alleged in counts eight, nine, twelve and thirteen, respectively, that defendants CE Services, CE Systems, Alfveby and Tantalos were reckless in handling, storing and discharging hazardous materials on the property. The defendants have moved to strike the recklessness counts on the ground that the plaintiff cannot state a legally sufficient claim for recklessness. The defendants argue that the plaintiff has merely restated its negligence claim and labeled it recklessness. They further argue that the plaintiff has alleged a legal conclusion with no supporting factual allegations, including the failure to allege an intent to injure by the defendants. In response, the plaintiff contends that it has alleged sufficient facts to support an independent cause of action for recklessness and asserts that knowledge of potential harm to others is the level of mental culpability required to state a cause of action for recklessness.
"Recklessness is a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Citations omitted; internal quotation marks omitted.) Dubay v. Irish, 207 Conn. 518, 532-33, 542 A.2d 711 (1988). "To be legally sufficient, a count based on reckless and wanton misconduct CT Page 8663 must, like an action in negligence, allege some duty running from the defendant to the plaintiff." Sheiman v. Lafayette Bank Trust Co.,4 Conn. App. 39, 46, 492 A.2d 219 (1985).
Because the caveat emptor doctrine bars the plaintiff's common law negligence claims then, a fortiori, claims for recklessness are also precluded by the doctrine because the duty element of recklessness is lacking. Consequently, the plaintiff cannot state actionable claims for recklessness because the caveat emptor doctrine prohibits such claims as a matter of law. This court grants the defendants' motions to strike counts eight, nine, twelve and thirteen of the plaintiff's revised complaint.
 E. STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY
The plaintiff also alleges claims for strict liability for ultrahazardous activity against defendants CE Services, CE Systems, Alfveby and Tantalos in counts twenty-nine, thirty, thirty-three and thirty-four, respectively. These counts incorporate paragraphs one through thirty-four of the statutory reimbursement counts and also contain the additional allegations cited below. The hazardous materials allegedly stored on the property by the defendants without the appropriate permits included, but were not limited to, the following: Guard All, Shell Solvent 142 HT; used oil filters and gas filters; antifreeze coolant; ethylene glycol base product; propylene alcohol; anti-wear hydraulic fluid; ZEP cleaner; DYNA clean, parts cleaning system; Mobil grease special; lubricating grease; Quaker State Golden Chasis Lubricant; Safety Kleen Cold Parts; Hot Line Traffic Paint; dirty absorbent pads and gloves; oil-soaked debris, rags and similar materials; heavy equipment and construction material; characterized and uncharacterized waste material; and scrap metal. (Revised Complaint, Count One, ¶ 12-13.) The plaintiff alleges that the defendants "used, stored, treated or Discharged and/or permitted the use, storage or treatment or Discharge at the Site without a permit, Hazardous Materials which, by their nature or by their use, storage, treatment, or Discharge, are abnormally dangerous." (Revised Complaint, Count 29, ¶ 35.) The plaintiff further alleges that "[t]he Hazardous Materials which [the defendants] used, stored, treated, or Discharged at the Site were and are abnormally dangerous, and their use, storage, treatment or Discharge, all without a permit, was an abnormally dangerous activity [that] . . . created a serious risk of environmental contamination that could not and cannot be eliminated by the exercise of reasonable care and that has injured, damages, and/or impaired and continues to injure, damage and/or impair, the Site." (Revised Complaint, Count 29, ¶ 36-37.) It is further alleged that "[a]s a result of the foregoing, French has been injured in that it has expended costs to investigate, CT Page 8664 contain, remove or mitigate the effects of such Hazardous Materials." (Revised Complaint, Count 29, ¶ 38.)
The defendants are moving to strike the strict liability counts on the basis that these counts fail to state claims upon which relief can be granted. They contend that the above-ground storage of hazardous materials does not constitute an abnormally dangerous activity, arguing that reasonable care can be applied to eliminate risk of injury, the activity is of common usage, and that the materials are not exceedingly corrosive and can be stored safely. The plaintiff counters that it has pleaded the requisite elements to state claims of strict liability for ultrahazardous activity. The plaintiff argues that these counts should not be stricken because there is no appellate authority addressing the issue of whether the storage of hazardous waste constitutes an ultrahazardous activity and because some Superior Court decisions recognize such claims in contexts involving similar activity to the storage of hazardous substances.
Strict liability for dangerous activities is "applicable when an activity, not regularly engaged in by the general public, is conducted in or near a heavily populated area, such that it necessarily subjects vast numbers of person to potentially serious injury in the event of a mishap." Levenstein v. Yale University, 40 Conn. Sup. 123, 126,482 A.2d 724 (1984). Imposition of strict liability for an abnormally dangerous activity mandates that certain factors exist: "an instrumentality capable of producing harm; circumstances and conditions in its use which, irrespective of a lawful purpose or due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and a causal relation between the activity and the injury for which damages are claimed." Caporale v. C. W. Blakeslee Sons, Inc.,149 Conn. 79, 85, 175 A.2d 561 (1961).
"The issue of whether an activity is abnormally dangerous . . . is a question of law for a court to decide." Green v. Ensign-Bickford Co.,25 Conn. App. 479, 485, 595 A.2d 1383, cert. denied, 220 Conn. 919,597 A.2d 341 (1991). "The courts in Connecticut and other jurisdictions which recognize the doctrine of strict liability for dangerous activities, impose it only in narrow circumstances." Levenstein v. YaleUniversity, supra, 40 Conn. Sup. 126. Traditionally, strict liability for ultrahazardous activity has been applied solely in the context of blasting and explosives; Whitman Hotel Corp. v. Elliott WatrousEngineering Co., 137 Conn. 562, 79 A.2d 591 (1951); and was later extended to pile driving; Caporale v. C. W. Blakeslee Sons, Inc.,
supra, 149 Conn. 85; and research experiments involving highly volatile chemicals. See Green v. Ensign-Bickford Co., supra, 25 Conn. App. 485-87. CT Page 8665
Neither Connecticut's Supreme Court nor its Appellate Court has ruled on whether the storage of hazardous materials constitutes an abnormally dangerous or ultrahazardous activity for the imposition of strict liability. In Green v. Ensign-Bickford Co., supra, 25 Conn. App. 486, however, the court observed that the factors for a court to consider in determining whether an activity is abnormally dangerous are listed in 3 Restatement (Second), Torts § 520 as follows: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." (Internal quotation marks omitted.) Id., 486. "In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand it is not necessary that each of thembe present, especially if others weigh heavily." (Emphasis in original; internal quotation marks omitted.) Id., quoting 3 Restatement (Second), Torts, § 520, Comment (f).
There is a split of authority among the judges of the Superior Court as to whether the storage of gasoline in underground tanks and pumps is an abnormally dangerous activity where gasoline has leaked and contaminated neighboring property and water supplies. See Southern New EnglandTelephone Co. v. Clifford, Superior Court, judicial district of Litchfield, Docket No. 057131 (December 10, 1991, Pickett, J.) (5 Conn. L. Rptr. 331, 331-32) (finding allegations that defendants knowingly engaged in an abnormally dangerous activity involving the use of underground gasoline storage tanks and pumps from which gasoline discharged and invaded plaintiff's land sufficient to establish a strict liability claim); Michael v. Kenyon Oil Co., Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 344098 (March 22, 1989, O'Connor, J.) (4 C.S.C.R. 337, 339) (denying motion to strike because underground storage of gasoline is abnormally dangerous and sufficient factual allegations were alleged to state a strict liability claim); but see Goodrich v. Jennings, supra, 19 Conn.L.Rptr. 543-44, (finding that the storage of gasoline in an underground tank is not an ultrahazardous activity because the degree of risk is not particularly high as compared to the activities of blasting and pile driving, there is no evidence that the risk created by the activity cannot be eliminated by exercising reasonable care, and the activity is a matter of common usage in residential and commercial areas); Burns v.CT Page 8666Lehigh, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 342600 (July 12, 1988, Hennessey, J.) (3 C.S.C.R. 722) (finding the alleged leakage of gasoline insufficient to state a claim for strict liability noting that the plaintiff failed to allege whether the defendant's activities were conducted in a heavily populated area or whether the gasoline was stored in an unsuitable or dangerous location). Similarly, in construing Connecticut law, some judges of the federal district court have found that the storage of hazardous wastes and toxic solvents, which were released into the environment, was not an abnormally dangerous activity. See Arawana MillsCo. v. United Technologies Corp., 795 F. Sup. 1238, 1251 (D. Conn. 1992);[9] Nielsen v. Sioux Tools, Inc., 870 F. Sup. 435, 442 (D. Conn. 1994).
The judges of the Superior Court have found that the disposal of toxic and hazardous materials constitutes an abnormally dangerous activity. See e.g., Mather v. Birken Manufacturing Co., Superior Court, judicial district of Hartford at Hartford, Docket No. 564862 (December 8, 1998,Hennessey, J.) (23 Conn.L.Rptr. 443, 447-49) (upholding plaintiff's strict liability for ultrahazardous activity claim because of allegations that the defendants directly disposed hazardous waste into the soil and environment); Barnes v. General Electric Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 529354 (July 25, 1995, Hennessey, J.) (14 Conn.L.Rptr. 455, 456-59) (denying motion to strike because allegations of burning, burial and disposal of toxic materials that contained latent defects and dangers constituting a menace to human life sufficiently alleged that the defendants' actions were abnormally dangerous to support a strict liability for ultrahazardous activity claim); see also Albahary v. Bristol, 963 F. Sup. 150, 154-55
(D. Conn. 1997) (disposal of toxic materials at a landfill constitutes an abnormally dangerous activity sufficient to maintain a cause of action for strict liability); but see Bernbach v. Timex Corp., supra,989 F. Sup. 407-408, (dismissing a strict liability for ultrahazardous activity claim because "the complaint [was] devoid of allegations that could support a finding that the substances stored and disposed of by Timex [were] so inherently dangerous that the risk of probable injury may not be eliminated by the exercise of due care"); McDonald v. TimexCorp., 9 F. Sup.2d 120, 122-23 (D. Conn. 1998) (dismissing a count alleging strict liability for ultrahazardous activity despite allegations of hazardous waste disposal and dumping because sufficient factual allegations regarding the circumstances and conditions of the activities that would make them intrinsically dangerous irrespective of the exercise of due care, had not been pleaded).
Other decisions, distinguishing between the disposal of hazardous materials and the storage of such materials, have held that mere storage CT Page 8667 does not constitute an ultrahazardous activity without allegations that the corrosive properties or the gaseous nature of the materials makes them unable to be safely stored and reasonably handled without leaking or escaping into the environment. See Connecticut Water Co. v. Thomaston,
supra, 16 Conn.L.Rptr. 216-17; Skelton v. Chemical Leaman Tank Lines,Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 359236 (May 13, 1996, Corradino, J.) (17 Conn.L.Rptr. 56, 57-58); (Revised Complaint, Count 22, ¶ 37).
This court applies the test set out by the Appellate Court in Green v.Ensign-Bickford Co., supra, 25 Conn. App. 485, incorporating the factors in § 520 of 3 Restatement (Second), Torts, and aligns itself with those judges of the Superior Court finding that the mere storage of hazardous materials without sufficient allegations of the abnormally dangerous propensities of the materials does not constitute an ultrahazardous activity. The factual allegations do not set forth a legally sufficient basis for a claim of ultrahazardous activity and, therefore, the strict liability counts are stricken on the ground that they fail to state a claim upon which relief can be granted. The plaintiff has not alleged three of the six factors set out in § 520 of 3 Restatement (Second) of Torts. Particularly, the plaintiff has failed to allege any facts relating to factors (d), (e) and (f). The plaintiff has not alleged that the defendants' storage of the hazardous materials is not a matter of common usage; that it occurred in a heavily populated area or otherwise inappropriate, unreasonable or dangerous location; or that the value to the community of storing such materials for transportation to appropriate waste treatment or other facilities is outweighed by the dangerous attributes of storing such materials. As to storage, the plaintiff has failed to allege whether the nature of the materials rendered them intrinsically dangerous and incapable of storage without escaping into the environment despite the exercise of reasonable care in following adopted safety standards. The plaintiff has also failed to allege whether the defendants' activities were conducted in a residential area and whether the materials were stored in unsuitable or dangerous places.
With respect to the disposal of hazardous materials, this court uses the decisions discussing disposal of such materials by analogy to determine whether the allegations in this case are sufficient to state a claim upon which relief can be granted. The plaintiff has failed to allege sufficient facts regarding the disposal of hazardous materials to state a claim upon which relief can be granted. The plaintiff does not directly allege or even use the word "disposal." Rather, the plaintiff alleges discharge of hazardous materials but does not allege whether the discharge was a result of direct disposal, burial, leakage or some other means. In summation, the plaintiff's allegations are insufficient in that CT Page 8668 they do not meet the Restatement factors adopted by the Appellate Court for determining whether an activity is ultrahazardous, and they do not sufficiently allege that the defendants' storage, use and discharge of the hazardous materials was abnormally dangerous so as to warrant imposition of strict liability. Therefore, counts twenty-nine, thirty, thirty-three and thirty-four purporting to state claims for strict liability for ultrahazardous activities are stricken.
 F. CUTPA
In counts thirty-six, thirty-seven, forty and forty-one, the plaintiff alleges that defendants CE Services, CE Systems, Alfveby and Tantalos, respectively, violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. In the CUTPA counts, the plaintiff incorporates the allegations contained in the statutory reimbursement counts, the recklessness counts, the negligence counts, the negligence per se counts and the strict liability counts against each defendant. The plaintiff then goes on to allege that the defendants are "person[s]" engaged in the conduct of "trade" or "commerce" in this state within the meaning of General Statutes § 42-110 et seq. The plaintiff further alleges that the defendants' acts and practices were violations of public policy, immoral, unethical, oppressive and unscrupulous constituting unfair trade practices that caused it ascertainable loss. The defendants move to strike the CUTPA counts on the ground that they fail to state claims upon which relief can be granted. They argue that the alleged activities do not fall within the definition of "trade" or "commerce." They also argue that the requisite consumer, competitor or business relationship must be alleged, but that such a relationship does not exist here because the defendants neither leased nor purchased the site from the plaintiff.
The plaintiff counters that it has alleged the required elements to state a CUTPA claim. The plaintiff asserts that three categories of plaintiffs have standing to bring a CUTPA claim: (1) consumers; (2) competitors; and (3) other business persons affected by the unfair or deceptive act. As such, the plaintiff contends that it has alleged that, as a commercial entity, it is a consumer of the subject property formerly leased, occupied and used by the defendants for their business enterprises. The plaintiff further contends that it has been directly injured by the defendants' mishandling of hazardous materials without required permits in the course of conducting their trade or commerce within the meaning of CUTPA.
General Statutes § 42-110b (a) states that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "`Trade' and CT Page 8669 `commerce' means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." General Statutes § 42-110a (4). General Statutes § 42-110g (a) provides, in part' that "[a]ny person who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method, act or practice prohibited by section 42-100b, may bring an action . . . to recover actual damages."
While CUTPA is a remedial statute and should be liberally construed in favor of consumers and businesses whom the legislature intended CUTPA to benefit; General Statutes § 42-110b (d); Service Road Corp. v.Quinn, 241 Conn. 630, 637-38, 698 A.2d 258 (1997); Connecticut's Supreme Court has stated that "it strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any `trade' or `commerce.'"Jackson v. R. G. Whipple, Inc., 225 Conn. 705, 725-26, 627 A.2d 374
(1993). Moreover, Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480,496, 656 A.2d 1009 (1995), explicitly states, "CUTPA imposes no requirement of a consumer relationship" but that competitors or other business persons can bring a claim.
In Connecticut Water Co. v. Thomaston, Superior Court, judicial district of Hartford at Hartford, Docket No. 535590 (November 6, 1996,Corradino, J.), the court interpreted the phrase "other business persons" from the Larsen case, and explained that "the use of this `other business person' language was not intended to expand the operation of the federal act or CUTPA beyond the original purposes of these acts — the preservation of fair competitive markets and the direct protection of consumers which was the whole aim of the legislative endeavor in the first place. Thus, when Larsen said CUTPA did not depend on a consumer relationship but was also designed to protect competitors and other business people it meant that protecting those underlined entities was necessary to ensure fair competition. The latter goal requires giving protection to direct competitors but also at times to business people who have that type of a commercial relationship to the alleged wrongdoer which is such that the latter's unfair and deceptive acts might deleteriously affect fair competition in a particular market place." Id. In Connecticut Water Co. v. Thomaston, supra, Superior Court, Docket No. 535590, the Connecticut Water Company brought suit against the Standard Cycle and Auto Company (SCASCO) and the town of Thomaston for contamination of its well field located below a town operated garage that had underground gasoline storage tanks that leaked. SCASCO moved to strike the CUTPA claim against it on the ground of legal insufficiency. Id. It argued that the company had not alleged the requisite business or CT Page 8670 consumer relationship between the company and itself. Id The company countered that it had alleged that it was a business affected by unfair conduct. Id. In striking the CUTPA count, the court noted that "CUTPA and its federal counterpart protect two classes or deal with two sets of problems. First, there is the protection of consumers from unfair or deceptive acts or practices. Then there is a concern with ensuring fair competition and in order to accomplish that end, competitors and other business people can bring a CUTPA action. But at the very least, other business people, who are not direct competitors, must have some type of commercial relationship with the alleged wrongdoer commercial relationship not being so much a business to business relationship but some kind of relationship in the market place so that the particular acts of wrongdoing alleged will interfere with fair and open competition in that particular marketplace." Id. "Can it really be seriously argued that the alleged conduct of [the defendants] in polluting [the plaintiff's] well field, improper as that may be, was the type of conduct that anyone drafting this legislation expected the commissioner of consumer protection to regulate in the absence of a consumer, competitor or other type of business relationship between the two companies . . . ?" Id.
In Mather v. Birken Manufacturing Co., supra, 23 Conn.L.Rptr. 444-45, the plaintiff, owners and possessors of land on a road where the defendants also owned or operated a manufacturing facility that used, generated, stored and discharged hazardous chemicals and wastes, brought a CUTPA claim alleging that the close proximity of the parties' properties and the defendant's contamination of their properties resulted in a diminution of property values and a disruption of business activity. Id., 449-50. That court found that the alleged relationship did not constitute a consumer, competitor or business relationship. It held that the plaintiffs' lack of factual allegations demonstrating a sufficient consumer, competitor or business relationship with the defendants rendered their CUTPA claim legally insufficient. Id., 450.
Similarly, the plaintiff has not alleged a sufficient consumer, competitor or business relationship with the defendants in the present case. The plaintiff has alleged that it is the current owner of property that the defendants formerly leased, used and occupied when previously owned by others. Yet, the plaintiff cites no authority, nor has the court found any that recognizes a CUTPA claim premised on such a relationship. The relationship alleged by the plaintiff does not constitute a consumer, competitor or business relationship within the meaning of CUTPA. Accordingly, counts thirty-six, thirty-seven, forty and forty-one of the plaintiff's revised complaint are stricken.
 III. CONCLUSION
CT Page 8671
For the reasons explained above, this court grants in part and denies in part the defendants' motions to strike. This court strikes the negligence counts, counts fifteen, sixteen, nineteen and twenty, the recklessness counts, counts eight, nine, twelve and thirteen, and the ultrahazardous activity counts, counts twenty-nine, thirty, thirty-three and thirty-four, as well as the CUTPA counts, counts thirty-six, thirty-seven, forty and forty-one.
The court denies the motion to strike with respect to the negligence per se counts, counts twenty-two, twenty-three, twenty-six and twenty-seven, and the § 22a-452 statutory reimbursement counts, counts one, two, five and six.
So Ordered.
D'ANDREA, J.